IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ALEX GREGORY, JR. and | * | Chapter 7 |
| DAWN GREGORY, | * | |
|     Debtors | * | |
| | * | Case No.: 1-01-bk-06000MDF |
| M&T BANK, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-04-ap-00093 |
| | * | |
| ALEX GREGORY, JR. and | * | |
| DAWN GREGORY, | * | |
|     Defendants | * | |
| | * | |

## OPINION

### Procedural and Factual History

Before me are cross motions for summary judgment in the above-captioned adversary case. Alex Gregory, Jr. ("Debtor") was the president and treasurer of a closely-held corporation, Down Under Steakhouse, Inc. (DUSH), which operated a small chain of restaurants. He also was the president and treasurer of DUSH's affiliate, DUSH Hershey, Inc. ("Hershey"). In December 1999, DUSH entered into a loan agreement with Keystone Financial Bank, N.A. – the predecessor of Plaintiff M&T Bank ("M&T"). The loan of $1million was secured by a purchase money security interest in machinery, equipment and other assets of DUSH. As further security, M&T required Debtor to execute a personal guarantee on the promissory note given by DUSH. M&T perfected its security interest by filing a UCC-1 financing statement in Clinton County, Pennsylvania, where DUSH's registered office was located when the UCC-1 was filed. At an

1

unspecified future date, DUSH moved its registered office from Clinton County to Centre County and then later relocated to Cumberland County. M&T did not refile its UCC-1 financing statement either in Centre County or in Cumberland County. At the time of the filing of Debtor's bankruptcy petition, DUSH's machinery and equipment was subject only to the M&T lien.

In December 2001, Debtor, on behalf of Hershey, entered into an agreement to sell the assets of the Hershey restaurant to Cocoplex Hospitality Group, Inc. ("Cocoplex"). Debtor admits that the equipment included in the proposed sale was subject to M&T's lien and that the equipment never was formally transferred from DUSH to Hershey. (Transcript, Rule 2004 Examination, pp. 30, 53). All assets other than the liquor license were sold to Cocoplex for $40,000. The liquor license, which Hershey was purchasing under an installment sale from Room One Operations Management, LLC, was reconveyed to the seller in exchange for a credit on the amounts paid. Of the $40,000 available at settlement, $32,321.44 was used to pay delinquent employee withholding and sales taxes. According to Debtor, the taxes were required to be paid in order to obtain approval for transfer of the liquor license. (Transcript, Rule 2004 Examination, p. 108). Debtor believed that in his capacity as an officer of Hershey, he was responsible for the payment of these taxes. (Transcript, Rule 2004 Examination, p. 105).

M&T filed the instant adversary requesting the court to hold that the debt owed by Debtor to the bank is nondischargeable under 11 U.S.C. §523(a)(6) and that to the extent that M&T's collateral was used to satisfy claims entitled to priority under 11 U.S.C. § 507(a)(8), M&T is entitled to assert a priority claim. M&T asserts that it is an assignee of the priority claims of the taxing authorities because its collateral was liquidated to pay trust fund tax obligations that would have existed and been entitled to priority treatment in Debtor's case if the debts had not

2

Case 1:04-ap-00093-MDF    Doc 22    Filed 02/11/05    Entered 02/16/05 08:02:33    Desc
Main Document    Page 2 of 8

been paid prepetition from M&T's collateral. M&T further asserts that the court should declare its debt nondischargeable because its collateral was liquidated to satisfy a tax obligation without M&T's knowledge or agreement. M&T contends that Debtor, as the principal of Hershey and a person responsible for the payment of trust fund taxes, inflicted a willful and malicious injury upon M&T by using its collateral to pay Debtor's obligations. M&T filed a motion for summary judgment on its complaint. Debtor filed a cross motion arguing that M&T is not entitled to relief as a matter of law because it does not hold a perfected security interest in the restaurant equipment, that the property was sold subject to any liens that M&T may have held and that the taxes paid at settlement were paid by the purchaser and included, in part, non-trust fund taxes. In support of each motion, each party has filed a "Statement of Undisputed Facts" to which the other party has filed a response claiming one or more disputes. Briefs have been filed on the matter, and it is ready for decision.[1]

**Discussion**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to a bankruptcy case by virtue of Federal Rule of Bankruptcy Procedure 7056, provides that an order granting summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." All doubts as to the facts must be resolved in favor of the non-moving party. *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d. Cir. 1997). "The inquiry is whether the evidence presents a

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

3

sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

  *a. Assignment of priority status of claim*

  M&T asserts that the liquidation of its collateral without its consent to pay delinquent trust fund taxes entitles M&T to priority as an assignee of government tax claims that otherwise would have been filed in Debtor's case. M&T relies on *In re Missionary Baptist Foundation of America, Inc.* 667 F.2d 1244 (5th Cir. 1982) as authority for its position. In *Missionary Baptist,* the Fifth Circuit upheld the bankruptcy court's finding that a store which cashed payroll checks for the debtor's employees was an assignee of the employees' claims. Therefore, the debtor was required to treat the store's claim as a priority claim under 11 U.S.C. § 507(a)(3) for unpaid wages. The Fifth Circuit distinguished between assigned claims, which do succeed to the priority of the original claim, and subordinated claims, which are barred from obtaining priority status under 11 U.S.C. § 507(d).

  M&T argues that it must be an assignee since it is not a subrogee and, therefore, is entitled to receive priority treatment of its claim. Under Section 509(a) of the Bankruptcy Code, a co-debtor or surety that satisfies a debt is considered a subrogee. Since Section 509(a) does not purport to define subrogee, common law distinctions between subrogation and assignment also apply. At common law, a subrogee is any party that pays a debt for another provided that the payment is compulsory or made to protect the payor's interest. *In re Ted True, Inc.* 94 B.R. 423 (Bankr. N.D. Tex. 1988). Both definitions include the concept that the subrogee has an obligation to pay the liability. However, if the payment of the debt is voluntary, the payor is considered an

4

assignee and not subject to the limitations of Section 507(d). *Ted True,* 94 B. R. at 427. It is clear that M&T was under no obligation to satisfy Hershey's tax debt. M&T, thus, is not a subrogee. However, it does not necessarily follow that the bank is an assignee. Under Pennsylvania law, a "legal assignment is . . . 'a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing.' *In re Purman's Estate*, 358 Pa. 187, 190, 56 A.2d 86, 88 (1948)(*internal citations omitted*). Pennsylvania also recognizes an equitable assignment, which is "'[a]ny order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment . . . . *Id.* In the instant case there was no connection between the taxing authorities and M&T and, therefore, nothing that could give rise to an assignment. To agree to an assignment, whether explicitly or implicitly, there must be some volitional act. *In re Edward W. Minte Company, Inc.,* 286 B.R. 1, 4, fn. 8 (Bankr. D.C. 2002)(*citing Missionary Baptist*). *See also Restatement (First) of Contracts*, § 149 (2004)("(1) An 'assignment' of a right is a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such other person or to a third person.").Therefore, I find that summary judgment in favor of Debtor is appropriate.

    b.    *Nondischargeablility of the claim under Section 523(a)(6)*

In pertinent part, 11 U.S.C. §523(a)(6) provides as follows:

>(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §523(a)(6).

The burden of proof in a case under 11 U.S.C. §523(a)(6) rests on the creditor/plaintiff. *In re Graham,* 973 F.2d 1089, 1101 (3d Cir. 1992). The Court of Appeals for the Third Circuit has adopted a strict interpretation of § 523(a)(6) holding that actions are "willful and malicious within the meaning of § 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury." *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994). Reckless actions and even deliberate actions that have a high probability of producing harm are not considered willful and malicious. *Id*. at 307. "Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's ... rights and the debtor's knowledge that the conduct will cause particularized harm." *In re Paul,* 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001), *citing In re Longley,* 235 B.R. 651, 656 (10th Cir. BAP 1999). Concluding that the *act* causing the injury was intentional is not enough to find the claim nondischargeable. The *injury* itself must have been intended or substantially certain to occur. *In re Lahiri,* 225 B.R. 582, 586 - 587 (Bankr. E.D. Pa. 1998) (italics added), *citing Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

When intent is at issue, it is difficult to resolve an adversary complaint by summary judgment. Evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ. *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 524 (3d Cir. 2004), *citing Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 24 (3d Cir.1985);

6

*Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). *See also Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 509 (3d Cir. 1996) (summary judgment is "rarely appropriate" when intent is an issue of material fact); *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (trial court must be cautious about granting summary judgment when intent is at issue).

Intent is an integral element of a case for nondischargeability under Section 523(a)(6). Under the *Anderson* standard cited above, for summary judgment to be granted in favor of either party in the instant case the Court must be convinced either: (1) that there is no evidence in the record that Debtor intended to injure M&T (or acted with a substantial certainty of producing injury) when the equipment was sold, or (2) that there is indisputable evidence of such intent or certainty. Clearly there is evidence that supports both positions in this case. For example, Debtor testified at deposition that he knew that M&T had a security interest in the property being sold, that the bank had not consented to the sale, and that he was taking no steps to insure that M&T's lien was satisfied. These facts suggest that Debtor intended to injure M&T or acted with substantial certainty of producing injury. Debtor responds that he believed that the purchaser had assumed responsibility for satisfying the lien and that the equipment was sold subject to the lien. If believed, Debtor's testimony would rebut the allegation that his actions were intended to injure or substantially likely to cause injury to M&T. In his brief Debtor asserted an additional defense that M&T's security interest was not valid as of the date of the sale. Even if this defense were valid[2], it obviously was not Debtor's belief when he decided to sell M&T's collateral. Debtor

---

[2] Debtor argues that he could not have intended to harm M&T because M&T had no valid security interest in the equipment that was sold and was not prejudiced by the sale. Debtor argues that M&T's failure to refile its security interest when DUSH moved its corporate offices

7

conceded in his Rule 2004 examination that the equipment sold by Hershey to Cocoplex was encumbered by M&T's lien. But while acknowledging the validity of the lien, he stated that he believed that the purchaser's agent was intending to "work something out" with the bank. (Rule 2004 Examination, p. 48.) Given this possibility, as well as the myriad of other possible proofs on the issue of intent, summary judgment is inappropriate. An order denying both the motion and the cross motion for summary judgment on the issue of nondischargeability under Section 523(a)(6) will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: February 11, 2005

*This electronic order is signed and filed on the same date.*

---

out of Clinton County, where M&T's UCC-1 was filed, divested the bank's interest. M&T responds that the security interest remained effective as against Debtor regardless of whether it was renewed or not. M&T's position is accurate. "Although unperfected, as between buyer and seller (and seller's assigns), a security interest forms an enforceable lien giving the holder of the lien the right to recover against the collateral upon which the unperfected security attached under the U.C.C. U.C.C. §§ 9-201 and 9-301." *In re Reese* 194 B.R. 782, 786 (Bankr. D. Md. 1996); *In re Ragan,* 140 B.R. 283 (Bankr. D. Kan. 1992); *In re Freeman,* 72 B.R. 850, 853 (Bankr. E.D. Va. 1987); *In re Chase,* 37 B.R. 345, 347 (Bankr. D. Vt. 1983); *In re Evingham,* 27 B.R. 128, 129 (Bankr. W.D.N.Y. 1983).