IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ALEX GREGORY, JR. and | * | Chapter 7 |
| DAWN GREGORY, | * | |
|     Debtors | * | |
| | * | Case No.: 1-01-bk-06000MDF |
| M&T BANK, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-04-ap-00093 |
| | * | |
| ALEX GREGORY, JR. and | * | |
| DAWN GREGORY, | * | |
|     Defendants | * | |
| | * | |

## OPINION

### Procedural and Factual History

Before the Court is M&T Bank's ("M&T") Motion for Reconsideration (the "Motion") of an Order (the "Order") entered on December 28, 2005 denying M&T's objection to the dischargeability of a debt owed by Alex Gregory, Jr. ("Debtor") as a guarantor of a commercial loan. The Procedural and Factual History contained in the December 28 Opinion (the "Opinion") that accompanied the Order is incorporated herein by reference. For the reasons that follow, after reconsideration of the Opinion, the Order entered on December 29, 2005 is affirmed. [1]

### Discussion

A motion for reconsideration constitutes a motion under Rule 9023 of the Federal Rules

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

of Bankruptcy Procedure. *Prudential Ins. Co. v. Farley (In re Farley)*, 158 B.R. 48, 52 (E.D. Pa. 1993). Bankruptcy Rule 9023 provides that "Rule 59 [of the Federal Rules of Civil Procedure] applies in cases under the Code, except as provided in Rule 3008." Fed. R. Bankr.P. 9023. A motion for reconsideration is governed by Fed. R. Civ. Pro 59(e), which authorizes a party to move to alter or amend a judgment within ten days of its entry. *McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co.,* 817 F.Supp. 538, 541 (M.D. Pa. 1993). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002) (quoting *Abu-Jamal v. Horn*, 2001 U.S. Dist. LEXIS 20813, No. 99-5089, 2001 WL 1609761, at *9 (E.D.Pa. Dec.18, 2001) (citations and internal quotation marks omitted)). Likewise, reconsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment. *McDowell Oil Serv. Inc.*, 817 F.Supp. at 541.

In its Motion, M&T asserts that the Court failed to apply the proper standard for

determining whether Debtor's conduct was willful under the "willful and malicious" standard of § 523(a)(6). According to M&T, even if the Court found that Debtor did not intend to injure the bank, it should have considered whether there was an objective substantial certainty that an injury would result from Debtor's conduct. M&T relies on *Conte v. Gautam (In re Conte)*, 33 F.3d 303 (3rd Cir. 1994), in which the Court of Appeals for the Third Circuit held that a debt is nondischargeable if it arises from an injury that was substantially certain to occur. The Court agrees with M&T that its prior opinion did not fully address the viability of *Conte* after *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998). Therefore, the Court will consider whether the debt owed to M&T may be found to be nondischargeable if it arose from an injury that was substantially certain to occur. Further, the Court will decide whether the substantial certainty of the injury is determined objectively by the trier of fact or whether the actor must know that the consequences are substantially certain to cause injury.

In *Kawaauhau*, the Supreme Court held that in order to constitute a willful injury under § 523(a)(6), a plaintiff must plead and prove that the defendant actually intended to inflict harm, not merely that the defendant injured the plaintiff as a consequence of an intentional act. *Id.* at 61-62, 118 S.Ct. 974. Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974. *Kawaauhau* did not address, however, the state of mind required to meet the willfulness standard. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207 (9th Cir. 2001). In *Jercich*, the debtor argued that under the Supreme Court's holding in *Kawaauhau,* a plaintiff must prove that an actor possessed a specific intent to harm a creditor for the action to be characterized as "willful." The Ninth Circuit disagreed observing that although the Supreme Court determined that the harm must be intentional, not just the action, it

cited with approval the state of mind formulation set forth in its prior decision of *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) and in the Restatement of Torts (Second) § 8A. In *McIntyre*, the debt at issue arose from the debtor's conversion of the creditor's property. The Supreme Court held that the debt was excepted from discharge under § 523(a)(6), finding that a voluntary, wrongful act that the actor knows is wrongful and will necessarily cause injury meets the "willful and malicious" standard of § 523(a)(6). Similarly, the *Kawaauhau* Court cited the Restatement definition of intent which requires the actor either to desire the consequences of an act or to know the consequences are substantially certain to result. "Under this definition, the actor's deliberate act with knowledge that the act is substantially certain to cause injury is sufficient to establish willful intent." *In re Jercich*, 238 F.3d at 1207-08 (quoted in *Hamm & Associates, Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 836 (Bankr. E.D. Va. 2003). Therefore, *Kawaauhau* should not be interpreted narrowly to exclude actions in which a debtor may not have possessed an actual intent to harm the creditor, but should include situations where injury was substantially certain to occur.

Appellate court decisions have taken two approaches to determining the state of mind required for willfulness in the absence of a specific intent to harm, one "subjective" and the other "objective." Under the subjective approach, an injury is willful for purposes of § 523(a)(6) only if the debtor subjectively intended to cause injury or subjectively believed that injury was a substantially certain consequence of his deliberate action. *In re Jercich,* 238 F.3d at 1208 ("the actor's deliberate act with knowledge that the act is substantially certain to cause injury is sufficient to establish willful intent"); *Via Christi Regional Medical Center v. Englehart (In re Englehart),* 2000 WL 1275614, *2-3 (10th Cir.2000) ("the 'willful and malicious injury'

4

exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause the injury or at least believed that it was substantially certain to occur); *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 465 n. 10 (6th Cir.1999)("[an actor] must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior").

In contrast, under the objective approach, an injury is willful for purposes of § 523(a)(6) only if the debtor subjectively intended to cause injury or there was an objective substantial certainty of injury as a consequence of the debtor's action. *Miller v. J.D. Abrams, Inc.* (*In re Miller*, 156 F.3d 598, 604 (5th Cir.1998), *cert. denied,* 526 U.S. 1016, 119 S.Ct. 1249(1999). Under the objective approach, emphasis is placed on the finder of fact's assessment of the likelihood of injury instead of the debtor's knowledge or belief. *In re Englehart,* 2000 WL 1275614 at *3.[2]

Although several circuits have addressed § 523(a)(6) since *Kawaauhau*, the Third Circuit has not. Therefore, it must be determined whether the Third Circuit's 1994 decision in *Conte* retains its vitality. In *Conte* the Circuit Court held that actions are willful for purposes of § 523(a)(6) "if they either have a purpose of producing injury or have a substantial certainty of producing injury." *In re Conte,* 33 F.3d at 307. I conclude that the Third Circuit's holding in *Conte* that an injury is willful for purposes of § 523(a)(6) if an actor knows that his actions are substantially certain to cause injury remains good law. *Conte* is neither overruled by, nor

---

[2]The *Miller* court also determined that "willfulness" and "maliciousness" create a unitary standard under § 523(a)(6). *In re Miller*, 156 F.3d at 606 ("Aggregating 'willful and malicious' into a unitary concept might be inappropriate if the word they modified were 'act,' but treatment of the phrase as a collective concept is sensible given the Supreme Court's emphasis on the fact that the word they modify is 'injury.'")

5

inconsistent with, the Supreme Court's decision in *Kawaauhau.*

> [O]ne can properly conclude that the Supreme Court in *Kawaauhau* indirectly held that an injury is deliberate or intentional if an actor acts with knowledge that there is substantial certainty that injury will result. . . .The Court's citation with approval of *McIntyre v. Kavanaugh*, . . . suggests that [(a)] a specific intent to injure is not necessary," 4 *Collier on Bankruptcy* ¶ 523.12[1] at 523-92.1, and (b) an intentional injury is evidenced if an act is taken with knowledge that it will necessarily cause injury. *See Id."*

*In re Slomnicki*, 243 B.R. 644, 649 (Bankr. W.D. Pa. 2000).³ In adopting the subjective approach, the Court of Appeals for the Sixth Circuit found the Supreme Court's reference to the Restatement to be enlightening. "The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. . . . [U]nless *'the actor' desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,"* Restatement (Second) of Torts § 8A, at 15(1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (emphasis added). *Accord Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999). *Kawaauhau* does not require that an actor intend to inflict injury, but it does require that an actor, at a minimum, believe that an injury is substantially certain to occur. "[*Kawaauhau*] requires 'you *knew* that would hurt,' not 'any idiot would/should have known that would hurt'." *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 343 (Bankr. N.D. Ind. 2006) (emphasis in original). In

---

³At least one bankruptcy court in the Third Circuit has suggested that the *Conte* standard "is more reminiscent of the standard articulated in *Matter of Miller* than it is of the standard articulated in *In re Jercich*," thus implying the adoption of the "objective" approach. *In re Scott*, 294 B.R. 620, (cite) (Bankr. W.D. Pa. 2003). This Court respectfully disagrees finding that *Conte* does not address the required state of mind. Further, even if *Conte* had adopted the objective approach, for the reasons set forth in *Slomnicki*, the decision would be inconsistent with *Kawaauhau.*

6

the December 28 Opinion, I found that Debtor did not intend to injure M&T. I also must determine whether he knew that by failing to satisfy M&T's lien, it was substantially certain that the bank would be injured.

M&T argues forcefully that because Debtor knew at the time of the sale that M&T had a lien on the equipment and, nonetheless proceeded to sell the collateral, his conversion of the collateral was willful.[4] Some courts have adopted the approach that a borrower's conversion of a creditor's collateral is, *per se,* a willful and malicious injury. *In re Russell*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)(intentional injury occurs when debtor improperly uses creditor's collateral or proceeds of collateral). But there is no reason to assume that the holding in *Kawaaulau* should be applied any differently in a case involving the conversion of collateral than it does in instances in which other intentional torts are alleged. A *per se* approach is at odds with the holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 330, 55 S.Ct. 151 (1934), in which the Supreme Court held that a willful and malicious injury does not occur every time there is a conversion.

> The problem with conversion cases . . . is that rarely are the debtors acting out of a desire to injure the creditors, even though the injury to the creditor, although not desired, is almost always substantially certain to result from a debtor's actions. Thus, the key in conversion cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort or whether the conversion is a result of a negligent or reckless tort – but not willful or malicious.

*Avco Financial Services of Billings v. Kidd, (In re Kidd)*, 219 B.R. 278, 284 (Bankr. D. Mont.

---

[4]*In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003) ("the *Kawaauhau* opinion seems to reject the proposition that a debt arising from a knowing breach of contract is a willful and malicious injury excepted from discharge." *In re Peterson* 332 B.R. 678, 685 (Bankr. D. Del. 2005) ("a knowing breach of contract will not, without more, rise to the level of willful and malicious"). M&T has alleged a claim based not only on breach of contract, but also on an intentional tort of conversion.

7

1998). "In a case of conversion, a creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion." *Heritage Bank of Cen. Ill. v. Vogel (In re Vogel)*, 2005 WL 3506443 (Bankr. C.D. Ill. 2005); *see also In re Kidd*, 219 B.R. at 285.

In analyzing the circumstances of this case to determine whether the conversion of M&T's collateral was willful or simply reckless, the evidence must be examined to determine whether M&T has proven that Debtor knew that his action were substantially certain to injure the bank. Proof of a willful injury may be established through indirect evidence of a debtor's knowledge of a creditor's rights in collateral and his knowledge that his actions will cause a particular injury. *In re Longley,* 235 B.R. at 657 (cited in *In re Whiters*, 337 B.R. at 346 (internal citations omitted)). In the context of a conversion, at least one court has suggested that the "true injury" to a creditor whose collateral has been sold without his authorization and who has not received the proceeds is not the failure to pay the debt, but the wrongful sale of the collateral and the use of the proceeds for other purposes. *In re Whiters*, 337 B.R. at 348.[5]

---

[5] In its Motion, M&T states that the court determined that Debtor's actions in selling M&T's collateral and failing to remit the proceeds to the bank were malicious. However, the Opinion stopped short of this holding and stated that "at best, M&T has shown that Debtor acted maliciously – that he committed a wrongful act without just cause or excuse." As observed in footnote 2, the Fifth Circuit in *Miller* adopted a unitary analysis of willful and malicious. Likewise, the Sixth Circuit in *Markowitz* adopted an integrated test. The Ninth Circuit found the *Kawaauhau* holding applicable to the willful prong of the test, but applied a separate analysis for "malicious injury," holding that maliciousness requires an intentional wrongful act that produces injury and that is done without just cause or excuse. *In re Jercich*, 238 B.R. at 1208-09. Since I find that M&T has failed to meet its burden to show that Debtor's acts were willful, it is not necessary to determine whether I must make an independent finding that Debtor's actions also were malicious.

8

Applying the principles set forth above, the Court will review and supplement the findings of fact in the prior Opinion and Order. The uncontroverted testimony adduced at trial established that Debtor signed a security agreement on behalf of Down Under Steak House, Inc. ("Down Under") that barred the transfer of certain collateral without M&T's consent and required the proceeds of any transfer to be conveyed to M&T. At some time after the execution of the security agreement, the collateral was transferred to a related entity, DUSH Hershey, Inc., ("DUSH") which operated a steakhouse restaurant in Hershey. There is no evidence that a formal assignment was filed and M&T was unaware of the transfer until it learned of the proposed sale. DUSH leased its business premises from Room One Corporation ("Room One"), whose principals included Glen Sponaugle ("Sponaugle") and Ross Santangelo ("Santangelo). Sponaugle and Santangelo formed CocoaPlex Hospitality Group, LLC. ("CocoaPlex") for the purpose of acquiring the Hershey restaurant. In May 2001, Debtor attempted to obtain concessions from M&T on the repayment of the loan. When M&T refused to restructure the debt, Debtor determined that he and the corporate entities he controlled would have to file for bankruptcy to resolve the financial crisis. After Debtor notified Sponaugle and Santangelo that he intended to close several of his restaurants, including the Hershey location, Sponaugle and Santangelo agreed to purchase DUSH's assets if the business could be acquired as a going concern. In December 2001, DUSH sold all of the assets of the business, including the liquor license[6] and M&T's collateral, to CocoaPlex subject to the terms of an Asset Purchase

---

[6] Debtor acquired the liquor license from Room One when he opened the Hershey restaurant. Attorney Anthony Foschi, who represented Debtor in the formation of the Down Under entities, testified that the purchase price that CocoaPlex was to pay Debtor for the assets of DUSH was the balance owed to Room One on the liquor license. Foschi also testified that he informed Sponaugle, Santangelo and their attorneys that the assets of DUSH were being

10

Agreement ("Agreement") executed on August 24, 2001. The Agreement stated that no liabilities were being assumed and that the assets were being sold free and clear of liens. CocoaPlex assumed management of the restaurant soon after the Agreement was signed because DUSH lacked cash to operate the business. Notwithstanding the provisions of the Agreement, the proceeds of the sale were used to pay outstanding taxes so that the liquor license could be transferred to CocoaPlex, leaving M&T's lien unsatisfied after settlement. Debtor stated that CocoaPlex knew it would have to satisfy the lien in order to consummate the sale and "that they [the buyers] were going to take care of that." He further stated that he would not have proceeded with the sale if he thought that M&T would not be paid. Prior to the sale, Sponaugle contacted a loan officer at the bank whom he knew both professionally and socially, and she referred him to Tom Doyle, the officer handling the Down Under loan. Although Sponaugle attempted to contact Doyle, no evidence was presented that Doyle communicated with Sponaugle or that M&T entered into an agreement with CocoaPlex resolving the bank's lien.

Aside from a footnote stating that the Opinion "relied heavily" on Debtor's "self-serving" testimony, M&T does not challenge the finding that Debtor believed that the lien would be paid by the purchaser outside of the sale. The Court relied not only on Debtor's testimony, but also on the testimony of Attorney Foschi, who negotiated the sale and who stated that he believed that the buyer agreed to satisfy M&T's lien. The Court is convinced that CocoaPlex wanted to acquire the restaurant as a going concern. In order to induce Debtor to sell the restaurant rather than close it, Sponaugle represented that CocoaPlex would negotiate a settlement with M&T that

---

transferred to CocoaPlex subject to M&T's lien.

11

would allow the sale to be consummated.[7] Accordingly, since Debtor thought that the purchaser would pay M&T, he did not believe with substantial certainty that M&T would be injured. Having failed to argue in the Motion that the Court's finding of fact was erroneous, M&T has failed to provide the Court with a basis on which to change its factual findings.

For these reasons the December 28 Opinion is supplemented and amended by the within Opinion, but the Order entered December 29, 2005 is neither vacated or amended. An appropriate Order follows.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: August 29, 2006

*This document is electronically signed and filed on the same date.*

---

[7]The Court is left to speculate as to whether CocoaPlex intended to acquire the property subject to M&T's lien expecting to "take care" of the lien later, or whether the purchaser assumed that M&T's security interest was unperfected and could be ignored once the assets were acquired. The only relevant inquiry in the within matter is what Debtor intended or believed.

12